UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIMOTHY MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01324-SEB-KMB |
| | ) | |
| CHRIS FARR HSA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Timothy Miller was an Indiana Department of Correction ("IDOC") inmate housed at New Castle Correctional Facility ("New Castle") when he filed his lawsuit. In this action, Mr. Miller alleges that the defendants – Chris Farr, Audra Grzelak, and Connie Burgess – violated his constitutional rights when his orthopedic shoes were confiscated. *See* dkts. 1, 15. Mr. Miller proceeds on Eighth Amendment deliberate indifference and Fourteenth Amendment equal protection claims against all defendants. Dkt. 15.

Defendants Farr, Grzelak, and Burgess have moved for summary judgment. Dkt. [82]; dkt. [86]. For the reasons below, the defendants' motions are **GRANTED**.

**I.**
**Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because

1

those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff failed to respond to either summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
### Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Miller was an IDOC inmate, housed at New Castle at all times relevant to his complaint. Dkt. 1 at 1.

Defendant Farr was a Health Services Administrator ("HSA") at New Castle from January 2023 through August 2023, employed by Centurion Health of Indiana, LLC ("Centurion"). Dkt. 83-1 at 1. Defendant Grzelak was an Administrative Assistant at New Castle in 2023, employed by Centurion. Dkt. 83-2 at 1.

Defendant Burgess is an Internal Affairs Clerk at New Castle, employed by the GEO Group. Dkt. 87-3 at 1. Ms. Burgess works in the Internal Investigations, or Internal Affairs ("IA") department.

### B. Orthopedic Shoe Policy

New Castle is operated by the GEO Group, Inc. Dkt. 87-2 at 2. The GEO Group is required to abide by IDOC rules, regulations, policies, and procedures. *Id*.  One such policy is the IDOC Correspondence policy. Dkt. 87-1.

If orthopedic shoes are ordered by a medical provider, the medical unit will provide orthopedic shoes that are appropriate in a correctional setting. Dkt. 57-1 at 1.

At New Castle, family members are generally permitted to provide inmates with medical items, including orthopedic shoes. Dkt. 57-1 at 1. However, per IDOC policy, any item that may pose an immediate danger to the safety of an individual or threat to the security of the facility must be submitted to the IA Department at New Castle for inspection and approval before being released to the offender. *Id*. at 1-2. IA inspects all items, regardless of whether medical staff have approved them. *Id* at 2.

3

Orthopedic shoes can present a security risk if the support feature is made from a hard material that can be removed and fashioned into a weapon. *Id.*

### C. Mr. Miller's Related Medical History

On November 7, 2022, Mr. Miller had a visit with Nurse Practitioner Kelly Williams for complaints of foot pain. Dkt. 57-3 at 1-4. NP Williams diagnosed Mr. Miller with peripheral neuropathy and prescribed treatment with Voltaren gel 1%, Tylenol 500 mg 2 tabs every 6 hours as needed for pain, stretching exercises for plantar fasciitis, and follow up as needed for worsening pain or any other concerns. *Id.* at 3. NP Williams did not order or recommend orthopedic shoes. *Id.* at 1-4.

### D. Mr. Miller's Attempt to Order Orthopedic Shoes

Around January 1, 2023, Mr. Miller and two other inmates, Shane Cummings and Toby Vautaw, talked to a non-defendant nurse for the Assisted Living Unit (A-Unit) at New Castle about the inmates ordering their own orthopedic shoes. Dkt. 1 at 2.

In early 2023, HSA Farr was asked whether offenders in A-Unit were permitted to have family members send orthopedic shoes. Dkt. 57-1 at 2. HSA Farr understood that offenders could have orthopedic shoes as long as they did not contain any metal components that could pose a security risk. *Id.* He also understood all incoming items needed to be inspected for any components or contraband that could pose a security risk. *Id.*

HSA Farr later learned that inmate Cummings had orthopedic shoes sent in by a family member, and the plastic insoles were removed and confiscated by IA. *Id.* HSA Farr and Ms. Grzelak were not involved in IA's inspection or decision regarding inmate Cummings's shoes.

Around this time, Mr. Miller's family also sent him a pair of orthopedic shoes with hard plastic inserts. Dkt. 57-2 at 2; dkt. 87-2. Ms. Grzelak received the shoes and observed that they

had hard plastic inserts that could present a security risk. Dkt. 57-2 at 2. Ms. Grzelak presented the shoes to IA for inspection and approval, per her understanding of IDOC policy. Dkt. 57-2 at 2. Ms. Grzelak and HSA Farr attest that were not involved in IA's inspection of Mr. Miller's shoes. Dkt. 57-1 at 3; dkt. 57-2 at 2.

Ms. Burgess attested that she was given the shoes by Intelligence Investigator Wesley Braham after they were inspected and told to contact HSA Farr for approval due to the hard inserts in the shoes. Dkt. 87-2 at 1. Ms. Burgess told HSA Farr that he needed to review the shoes for approval. *Id*. Ms. Burgess and Investigator Braham attest that HSA Farr stated that inmates cannot have the hard insoles in the shoes because they pose a danger to safety and instructed them to be given to Ms. Grzelak. Dkt. 87-2 at 1; dkt. 87-3 at 1-2. Ms. Burgess did not inspect the shoes. Dkt. 87-2.

The plastic arch supports were removed from the shoes and confiscated on January 12, 2023, and the confiscating officer is identified as non-defendant D. Pierce. Dkt. 1-2 at 1. Ms. Grzelak gave Mr. Miller the shoes, without the plastic arch supports. Dkt. 57-2 at 2; dkt. 87-2 at 2.

HSA Farr received an email on February 7, 2023, from Terri Scarberry, a former nursing assistant at New Castle, which stated:

> Offender Tim Miller #189938 had his family purchase a pair of orthopedic shoes and ship them to the facility. He received them some time last week without the orthopedic inserts. I can't remember exactly who removed them, but we had the same issue with offender Cummings down here and they were returned to him. Offender Miller asked Jacobs while she was down here in A a little bit ago and she said for him to write you. They're the same shoes and inserts as offender Cummings. Is there anyway we could get Miller's inserts back or does he have to order new ones, what do we need to do?

Dkt. 57-1 at 4. HSA Farr responded:

> They were given to R and R (property room) for processing. Please let him know he needs to write a request to them. They might give them back to him since the other guy has his.

*Id*.

### III.
### Discussion

Mr. Miller proceeds on Eighth Amendment deliberate indifference claims and Fourteenth Amendment equal protection claims against all Defendants. Dkt. 15 at 4.

### A.  Personal Involvement

"'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.*

As an initial matter, Ms. Burgess is entitled to summary judgment on the claims against her. Mr. Miller has not responded to the summary judgement motions with any evidence or argument that would indicate Ms. Burgess was personally involved or had personal knowledge of the events that gave rise to Mr. Miller's complaint.

Further, Mr. Miller's complaint does not include any allegations that Ms. Burgess treated Mr. Miller differently than Mr. Cummings, or that she made any decisions regarding confiscating his arch supports. *See* Dkt. 1. The only apparent allegation against Ms. Burgess[1] in the complaint is that she told Ms. Scarberry that the arch supports were in her drawer and Mr. Miller wasn't getting them back because they were confiscated. Dkt. 1 at 5. Ms. Burgess has testified that she did not remove or hold the arch supports, only that she passed the box of shoes from IA Investigator

---

[1] Ms. Burgess was identified as Connie McCurry in the complaint. Mr. Miller later clarified that this defendant's last name is Burgess. Dkt. 42.

Braham to Ms. Grzelak. Dkt. 87-2. These facts are admitted without controversy because they are supported by evidence and not rebutted by Mr. Miller. The confiscation paperwork Mr. Miller submitted with his complaint indicated the arch supports were forwarded to the property room by Pierce on January 12, 2023, and HSA Farr's February 8, 2023 email stated that they were in the property room. Dkt. 1-2 at 1; dkt. 57-1 at 4.

Mr. Miller has pointed to no evidence from which a jury could conclude that Ms. Burgess was personally involved in his complaints. Accordingly, summary judgment is granted as to Ms. Burgess, and the Court need not discuss claims against her further.

### B. Deliberate Indifference to Medical Need

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

The Court assumes for purposes of summary judgment that Mr. Miller's foot pain was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that HSA Farr and Ms. Grzelak acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Miller's] health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Miller "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

The designated evidence illustrates that Mr. Miller had a visit with NP Williams for his complaints of foot pain, and that NP Williams provided medication and a treatment plan for his peripheral neuropathy. Dkt. 57-3 at 1-4. There is no record that NP Williams or any other medical provider ordered or recommended orthopedic shoes. *Id*. If a medical provider ordered orthopedic shoes, they would be provided by the facility. Dkt. 57-1 at 1. Thus, HSA Farr and Ms. Grzelak could not have knowledge that the orthopedic shoes sent to Mr. Miller by his family were for a serious medical need that Mr. Miller had.

8

Mr. Miller has not responded to the summary judgment motions, and his complaint contains no factual allegations that he suffered any harm from not receiving the arch supports in the shoes. *See* dkt. 1. Instead, Mr. Miller alleged in his complaint that HSA Farr and Ms. Grzelak were deliberately indifferent to his foot condition by not providing him with hard plastic arch supports in the shoes his family ordered for him. *Id*.

The record reveals that Mr. Miller was being treated by NP Williams for his foot condition, who gave him gel, pain medication, stretching exercises, and told him to follow up as needed. Mr. Miller's claim is essentially a demand for arch supports in his shoes, that was not prescribed by a medical provider. However, it is fundamental that prisoners are not entitled to demand specific care from their medical providers. *Walker v. Wexford Health Sources*, 940 F.3d 954, 965 (7th Cir. 2019). Additionally, HSA Farr is a health services administrator, and Ms. Grzelak was an administrative assistant. There is no evidence that they had any authority to prescribe Mr. Miller any medication or orthopedic shoes. *See Hill v. Meyer,* No. 21-2884, 2022 WL 1078871, at *4 (7th Cir. Apr. 11, 2022) (summary judgment for Health Services Administrator was appropriate where plaintiff did not produce evidence that she had the authority to order specific care or reason to question the adequacy of the care the plaintiff was receiving).

There is a question of fact as to which individual removed the hard insoles from the shoes sent to Mr. Miller. Ms. Burgess attests that HSA Farr made the decision to remove the hard inserts, while HSA Farr attests that he was not involved in the inspection or decision-making. This dispute is immaterial because all defendants agree that the shoes were inspected by an IA investigator. Dkt. 87-2 at 1; dkt. 57-1 at 2-3; dkt. 57-2 at 2-3. The parties do not dispute that the hard sole insoles were removed before Mr. Miller received the shoes, for a safety and security concern. Mr. Miller received confiscation paperwork that the plastic arch supports were removed because they were

9

"not allowed," and the signature of the confiscating officer is D. Pierce, who is not a defendant. Dkt. 1-2 at 1. The confiscation paperwork also indicates the insoles were forwarded to the property room, not kept by any defendant. *Id*.

HSA Farr and Ms. Grzelak delivered Mr. Miller orthopedic shoes with no hard plastic arch support. No reasonable jury could conclude that this action evinced deliberate indifference. Accordingly, Defendants HSA Farr and Ms. Grzelak are entitled to summary judgment in their favor on Mr. Miller's deliberate indifference claims.

## C. Equal Protection "Class of One" Claim

"The Equal Protection Clause of the Fourteenth Amendment prohibits intentional and arbitrary discrimination." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 696 (7th Cir. 2015). Mr. Miller is proceeding under a "class-of-one" theory because he has alleged "that [he] was singled out arbitrarily, without rational basis, for unfair treatment." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2014)[2].

To succeed on a class-of-one claim, Mr. Miller "must present a set of facts that plausibly depict official action utterly unsupported by a rational basis." *Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019). This is a "heavy burden." *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 877 (7th Cir. 2025). (cleaned up). When evaluating class-of-one claims, courts consider only whether a "conceivable rational basis for the difference in treatment" exists. *Id.* at 878 (cleaned up). "It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771

---

[2] Mr. Miller's complaint does not allege that he was a member of a protected class, or that any deprivation was based on an unjustifiable standard such as race, religion, or other arbitrary classification. *See Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir.1994); *Vukadinovich v. Bartels,* 853 F.2d 1387 (7th Cir.1988).

(7th Cir. 2021) (cleaned up). "Once a reason is identified, true or not true, we may look no further." *Waukegan Potawatomi Casino*, 128 F.4th at 878.

Mr. Miller's equal protection claim is premised on the allegation in his complaint that was treated differently than inmate Cummings – specifically, that Mr. Cummings had his plastic shoe inserts returned, while Mr. Miller did not. Dkt. 1 at 5-6.

Mr. Miller cannot demonstrate that he was intentionally treated differently than Mr. Cummings by any defendant. HSA Farr and Ms. Grzelak sent both pairs of shoes to be inspected prior to delivering them to Mr. Miller and Mr. Cummings. Dkt. 57-1 at 3; dkt. 57-2 at 3. Mr. Miller even states in his complaint that his shoe inserts were processed in the same manner as Mr. Cummings' shoe inserts:

> On 01/12/2023, Ms. Grzelak stated to Cummings that she took his heel and arch supports because they were made of plastic. Dkt. 1 at 2.
> …
> On February 2, 2023, Ms. Scarberry brought my shoes to "A" Unit with a yellow stating the heel and arch supports were taken. Ms. Scarberry stated that Mrs. Grzelak took it on herself to take these out of my shoes. Dkt. 1 at 4.

Mr. Miller also alleges both his and Cummings's arch supports were thereafter confiscated. Dkt. 1 at 4-5. Mr. Miller also attached confiscation paperwork showing that both his and Mr. Cummings's arch supports were confiscated by non-defendant Pierce. Dkt. 1-2 at 1-2. HSA Farr's email response also reflects his desire and intent for Mr. Cummings and Mr. Miller to receive equal treatment. Dkt. 57-1 at 3 ("[The shoe inserts] were given to R and R (property room) for processing. Please let [Mr. Miller] know he needs to write a request form. They might give them back to him since [Mr. Cummings] has his."). Mr. Miller's documentation also reveals that Pierce, and not any named defendant, returned the arch supports to Mr. Cummings. Dkt. 1-2 at 2.

Mr. Miller has not responded to the summary judgment motion and has not designated any evidence to show a reasonable jury could conclude that HSA Farr or Ms. Grzelak intentionally

11

singled out Mr. Miller arbitrarily, without rational basis, for unfair treatment. Accordingly, HSA Farr and Ms. Grzelak are entitled to summary judgment in their favor on Mr. Miller's Equal Protection claims.

## IV.
## Conclusion

Defendants' motions for summary judgment are **GRANTED**. Dkt. [82]; dkt. [86]. Final Judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: _____5/18/2026_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TIMOTHY MILLER
3180 East 700 North
Lebanon, IN 46052

All Electronically Registered Counsel

12